Arthur F. WELLS, Appellant,

v.

GENERAL ELECTRIC COMPANY, Workmen's Compensation Board et al., Appellees.

Court of Appeals of Kentucky.

Dec. 12, 1958.

W. C. Edrington, Louisville, for appellant.

Peter, Heyburn & Marshall, Gavin H. Cochran, Louisville, for appellees.

SIMS, Judge.

This appeal is from a judgment of the Jefferson Circuit Court affirming an order of the Workmen's Compensation Board (hereinafter referred to as the Board), denying appellant, Arthur F. Wells, compensation for an alleged injury to his back on October 8, 1954, while employed by appellee, General Electric Company (hereinafter referred to as the Company). The grounds relied upon for reversal are: 1. Under a liberal construction of the Workmen's Compensation Act, the Board should have allowed appellant compensation; 2. the Board erred in overruling appellant's motion to set aside its order of submission and permit him to introduce newly discovered evidence; 3. the Board did not make a sufficient finding of fact.

The record shows these facts. At the time of the alleged injury, October 8, 1954, Wells was 5 feet 11 inches tall, weighed 137 pounds and was 42 years of age. In 1942 he suffered what he called "sciatic rheumatism" and was treated by Dr. Hill, an osteopath, and by Dr. Dunn, a chiropractor. In 1951, when sitting in his home, Wells had an acute pain in his back and was treated by Dr. Patterson, an osteopath.

In July 1954 while in the employ of the Company his back was sore for about two hours while he was on the job but he did not go to a doctor as he concluded he had just strained a muscle. His back muscles gradually got worse and on October 8, 1954, in lifting, while in a stooping position, a "cook-top" weighing 35 pounds to a hook on an assembly line, a sudden pain shot through his lower back "like a couple of bones crushing together."

Wells worked the rest of that day, which was Friday. Also, he worked the following day, putting in some overtime. Monday morning, October 11th, he went to the Company's dispensary, complaining his back was paining him and told the nurse he had hurt it the previous Friday. Prior to going to the dispensary he had informed his foreman that he had hurt his back. Dr. Terry, a Company physician, instructed the nurse to give Wells heat treatments, which she did for about two weeks. Then Wells was sent to Dr. Smiley, a neurosurgeon, who treated the patient for several weeks and permitted him to return to work on December 8, 1954. Wells continued on the job until October 7, 1955, during which interval he put in considerable overtime and his absences from work were about those of the average workman.

Dr. Rummage, a surgeon testifying for the Company, said he examined Wells on October 11, 1954, and the patient complained of pain in his lower back which had existed for three or four months and had gotten gradually worse; he mentioned no specific accident or injury to the doctor, who took x-rays of him and found no injury to the spine. Dr. Leatherman, an orthopedic surgeon testifying for Wells, stated he examined the patient on October 8, 1955, and found "a disc lesion involving the lumbosacral spine"; that the patient "would have quite a bit of difficulty doing heavy work involving lifting and stooping * * *. A lot of time has elapsed since the onset of his back trouble."

The referee who heard the case for the Board recommended that Wells' claim be disallowed because the evidence showed no compensable injury and Wells' disability was due to a pre-existing cause. On review by the full Board a comprehensive opinion was delivered sustaining in effect the referee's findings and disallowing Wells' claim. On petition to the Jefferson Circuit Court the order of the Board was sustained.

It is argued by Wells that under a liberal construction of the Act, as provided in KRS 342.004, the Board should have allowed him compensation as "This (there) is certainly, no evidence that plaintiff did not suffer any disability as a result of the accident." Wells misconstrues KRS 342.-004, which reads: "This chapter shall be liberally construed on questions of law, as distinguished from evidence * * *." See Doan v. Cornett-Lewis Coal Co., Ky., 317 S.W.2d 876.

A liberal construction of the Act does not dispense with the imperative duty of a claimant to prove his case, nor relieve the Board of the duty of basing its findings upon evidence of substance, having fitness to induce conviction. A. C. Lawrence Leather Co. v. Barnhill, 249 Ky. 437, 61 S.W.2d 1; American Rolling Mill Co. v. Pack, 278 Ky. 175, 128 S.W.2d 187. Here, the Board's finding that Wells' disability was the result of a pre-existing disease and not the result of an accident suffered in the course of his employment rests upon evidence of substance having the quality to induce conviction, and we are without authority to disturb it. KRS 342.-285; Tafel Electric Co. v. Scherle, 295 Ky. 99, 173 S.W.2d 810. While the Act does not require claimant to establish his case by the weight of the evidence, it does put the burden upon him to show that his disability was the direct result of the injury of which he complains. Old King Mining Co. v. Messer, Ky., 252 S.W.2d 863.

Wells insists the Board erred in overruling his motion filed February 6, 1956, to set aside its order of submission entered December 20, 1955, and permit him

to introduce what he claims to be newly discovered evidence. The affidavit filed in support of this motion states the last day he worked was November 7, 1955, and when he returned November 9th, the foreman refused to let him work until he had been checked by the Company's doctor; that he went to a Company doctor who refused to let him work on account of his condition and "he has not worked anywhere since November 9, 1955, and has been up and down in bed ever since."

The record shows that on October 7, 1955, Wells introduced a part of his proof before the referee and then was given thirty days to complete it, during which time he took the deposition of Dr. Leatherman. A hearing was set before the referee on November 11, 1955, for the Company to offer proof, but none was heard and the Company was given thirty days to get in its proof and Wells was given five days thereafter for rebuttal. The Company completed its proof on November 15, and Wells' time for rebuttal expired on December 16. He offered nothing in rebuttal.

When the Company was taking its proof on November 15, counsel for Wells in cross-examining the Company's personnel manager, Gilfert, asked the witness if a foreman had not refused to let Wells return to work on November 9, without a medical check-up. Gilfert answered that the fact was not within his knowledge. It would have been an easy matter for Wells in the five days he had in rebuttal to show this fact. By no stretch of the imagination was it newly discovered evidence. The facts in the instant case clearly distinguish it from United States Coal & Coke Co. v. Gilley, 296 Ky. 522, 177 S.W.2d 877 and Searcy v. Three Point Coal Co., 280 Ky. 683, 134 S.W.2d 228.

We cannot agree with appellant that the Board did not make a sufficient finding of fact as required by KRS 342.275. The referee's opinion states, "Plaintiff's disability, if any, is due to pre-existing cause, and that if plaintiff did suffer an accident,

as defined in KRS 342.005, that he was not disabled, as a result, from carrying on his usual occupation." And the opinion of the full Board recites, "Plaintiff suffers no disability resulting from a personal injury sustained by accident * * *."

The judgment is affirmed.