Robert W. ROGERS, Appellant,

v.

DEPOSIT SERVICE CORPORATION, etc., Appellees.

Court of Appeals of Kentucky.

Jan. 27, 1967.

Joseph Davis, Louisville, for appellant.

S. Lloyd Cardwell, John K. Gordinier, Louisville, for appellees.

HILL, Judge.

Appellant, Robert W. Rogers, prosecutes this appeal from the circuit court judgment affirming an award made by the Workmen's Compensation Board fixing his permanent partial disability at 25 percent. He claims total permanent disability.

Rogers received injuries to his "back, leg and left arm" in a fall from a height of about ten feet onto a concrete floor from the top of a hogshead virtually filled with tobacco. He was placing the tobacco in the hogshead and then packing it down with his weight. He had been doing this work during the winter tobacco season for about fourteen years. At the time of his injury, he was forty-eight years of age and had been a farmer the greater part of his life. Although his formal education was meager, he could write his name. His duties required him to bend over from one hundred to two hundred times for each hogshead of tobacco he "packed," and he "packed" from twenty-five to thirty hogsheads per day.

His injury occurred January 9, 1964. He was hospitalized from January 9 through

January 19. He was in the hospital again from June 10 to June 15. During this time, he claimed to be paralyzed from the "waist down." He was admitted to Jewish Hospital in Louisville, Kentucky, on June 29, 1964, and remained there until July 14, 1964. During this period, he was given a myelogram, and an exploratory operation which resulted in the performance of a laminectomy by Dr. Rudy J. Ellis and Dr. H. Lester Reed. The operation disclosed no observable trouble except that Rogers had "extradural veins which were rather larger than usual." The report of the doctors performing this operation contained this notation, "There were tremendous extradural varicosities."

An agreement was entered into between the parties and approved by the Board on February 4, 1964, covering an estimated period of disability of twenty weeks only, beginning July 17, 1964. Appellant did not recover from his injuries within this twenty-week period, and on joint motion of the parties and by order of the Workmen's Compensation Board dated February 23, 1964, the claim was referred to a hearing officer for the taking of proof as to the extent and duration of appellant's disability.

Appellant claims, and so testified, that since discharge from the hospital in July 1964, he has suffered serious pain and cannot perform the work he customarily did before his injuries. He is supported in this contention by the testimony of Dr. George McCrocklin, a highly respected orthopedic surgeon, who testified, with no reservation, that appellant was totally and permanently disabled from the injuries of which he complained.

Testifying for appellee Deposit Service Corporation were Dr. Ellis and Dr. Reed, presumably as well qualified, who were the doctors who performed the operation on appellant. They stated appellant's disability was from 15 to 20 percent. On cross-examination, Dr. Reed increased his estimate of appellant's disability to the "upper limit" of 25 percent, which figure was apparently accepted by the Board in its final award.

■ The testimony being in sharp conflict, the award will not be disturbed if supported by substantial evidence. Tyler-Couch Const. Co. v. Elmore, Ky., 264 S.W. 2d 56, and Inland Steel Company v. Johnson, Ky., 336 S.W.2d 581. Appellant recognized the limitations of his right of appellate review but stoutly maintains that the evidence of Dr. McCrocklin on appellant's behalf is "uncontradicted" by appellee's medical witnesses and cites Sullivan v. Foster & Creighton Company, Ky., 394 S.W.2d 917 (1965). We do not so interpret the appellee's evidence.

■ It is true that in Sullivan, supra, this court said evidence may be "non-committal and therefore of no probative value." But we cannot apply that salutation to the evidence of Dr. Reed and Dr. Ellis. We quote from Dr. Reed's deposition:

"I felt from a medical standpoint his recovery was sufficient for rating purposes, and Dr. Ellis and I discussed this and concluded 15 to 20 percent permanent partial disability would be reasonable and fair, secondary to his injury, operation and residuals of same, and I felt it would be desirable for him to work if he could."

\*   \*   \*   \*   \*   \*

"I would think he could probably do work of this sort. He would have discomfort in doing it, I believe,—at least as of the present time, as I know him, but I do believe he could do the work."

\*   \*   \*   \*   \*   \*

"I believe he will get better."

\*   \*   \*   \*   \*   \*

"I really don't know what is causing this man's pain except that he related it to having its onset after he was injured, and I presume that some aggravating factors of the injury started it off, but what is causing his pain, I really don't know."

\*   \*   \*   \*   \*   \*

"Well, I think when he does excessive heavy work over a long period of time he will be subjected to some local pain in his back and maybe in his leg."

\* \* \* \* \* \*

"I would think it would be up to the man on that, (bending) I would think he could do a good bit of it."

\* \* \* \* \* \*

"I have seen people doing this kind of work described in the tobacco industry. I would think he could do this type of work with some discomfort. Again how much discomfort is problematical."

\* \* \* \* \* \*

" \* \* \* I wouldn't know how many times he could go without breaking down, I really couldn't answer this."

\* \* \* \* \* \*

"I think he could do this (usual type of work). I really don't know how much of it he could do, without he would have the opportunity to do it, want to do it, need to do it, and all these various elements come into it. I really don't know how much he could do this type of work."

\* \* \* \* \* \*

"I might go so far as say might have 25% as the upper limit in this type of work, something in this vicinity. This has to be a matter of judgment. There is no set way I know to be able to come up with a figure."

The evidence of Dr. Ellis is substantially the same as that of Dr. Reed. Hence we shall no further encumber this opinion by quoting from it.

We conclude the evidence presented to the Board on the extent of appellant's disability was inconsistent and conflicting and thus presented a question of fact, the determination of which was and is under the universal rules of law left to the Workmen's Compensation Board.

The judgment is affirmed.