Carol M. PALMORE, Secretary, Labor Cabinet (Special Fund), Appellant,

v.

Ida ALLGOOD, Calvert City Convalescent Center and Workers' Compensation Board, Appellees.

No. 88–CA–739–S.

Court of Appeals of Kentucky.

Dec. 9, 1988.

Discretionary Review Denied by Supreme Court April 26, 1989.

---

1. KRS 640.010 was changed by the 1988 General Assembly.

David R. Allen, Louisville, for appellant.

Karen Alderdice, Paducah, for appellee, Ida Allgood.

Charles E. Lowther, Mills, Mitchell & Turner, Madisonville, for appellee, Calvert City Convalescent Center.

Before COMBS, DYCHE and GUDGEL, JJ.

COMBS, Judge.

This is a workers' compensation appeal with the sole issue being the correctness of the apportionment of liability between the Special Fund and the employer. The Workers' Compensation Board, after finding the claimant to be totally disabled occupationally, apportioned two-thirds of the liability against the employer, and one-third of the liability against the Special Fund. The Marshall Circuit Court reversed the decision of the Board and held that all liability be apportioned against the Special Fund.

The medical testimony upon which this case hinges was given by a neurosurgeon who had treated the claimant for her back

problems. Claimant had suffered a herniated disc as a result of work-related incidents. The neurosurgeon testified that claimant's problem was caused by the incidents in two respects:

> Number one, causing the ruptured disc, and number two, arousing a problem that she has previously had that apparently was asymptomatic prior to those events, namely the degenerative lumbar spine disease that she has.

The neurosurgeon testified that claimant incurred a 15% occupational disability to the body as a whole based upon the guidelines of the American Medical Association. He stated that in his opinion 5% of the claimant's disability could be attributed to dormant, degenerative disc changes, and the remaining 10% of her disability could be attributed to the disc herniation she suffered at work. The Board followed the neurosurgeon's conclusions in apportioning liability.

The trial court's judgment stated that the neurosurgeon testified that the claimant would not have suffered a herniated disc but for the pre-existing degenerative disc condition. That conclusion is based upon the following answer given by the neurosurgeon:

> Q. As a long time practicing neurosurgeon, Dr. Meriwether, do you have an opinion as to whether or not a disc will normally or ordinarily herniate in the absence of some pre-existing degeneration as a result of lifting trauma?
>
> . . . .
>
> . . . I think in the patient over 45 years of age, that that is an accurate statement, that a disc is not going to herniate; and in all likelihood the herniation is related to the degenerative change.

The trial court concluded that this testimony was clear, uncontradicted evidence that the herniation would not have occurred but for the pre-existing degenerative disc. The trial court and the employer rely upon *Stovall v. Dal–Camp, Inc.*, Ky., 669 S.W.2d 531 (1984) (Leibson, J., dissenting). That case interpreted KRS 342.120 to mean that if the work-connected exertion

would not have caused any disability whatsoever but for the arousal of a non-disabling condition, then the apportionment of liability shall be entirely with the Special Fund. *Dal–Camp, supra,* at 535.

Reliance here upon *Dal–Camp* is inapposite because in that case, as well as in the two cases consolidated with it, the medical evidence was uncontradicted. *Dal–Camp, supra,* at 536. Here, while no other witness contradicted the neurosurgeon's testimony, it reasonably appears that his testimony contradicts itself. Even if the answer he gave to the effect that "in all likelihood" a herniation of a disc of a person of claimant's age is related to the degenerative change is taken to mean that but for the claimant's degenerative change the herniation would not have occurred, there still remains his testimony that only 5% of the 15% occupational disability is attributable to the pre-existing condition. The trial court's interpretation of the neurosurgeon's whole testimony may very well be exactly what the neurosurgeon meant, but it cannot be said that the Board's interpretation was unsupported by what he said. More than one reasonable inference could have been drawn from the testimony, and the one drawn by the Board was supported by substantial evidence. Thus, the trial court was not free to overturn the Board's apportionment. *See Jackson v. General Refractories,* Ky., 581 S.W.2d 10 (1979) (Stephenson, J., dissenting).

The judgment of the Marshall Circuit Court is hereby reversed and remanded with direction to reinstate the opinion and award of the Board.

Further, pursuant to CR 76.15(3)(A), the application of CR 76.20 and CR 76.32, as well as other appropriate Rules of Civil Procedure for further appellate steps, is reinstated effective the date of this opinion.

All concur.